1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

Plaintiff,

v.

MARTIN VEGA-ORTIZ,

Defendant.

Case No. 13-cr-1636-BTM

**ORDER DENYING DEFENDANT'S MOTION TO DISMISS THE INFORMATION**

Defendant Martin Vega-Ortiz ("Mr. Vega" or "the defendant") is charged with a single count of being a removed alien unlawfully present in the United States in violation of 8 U.S.C. § 1326. He entered a not guilty plea on May 28, 2013. The defendant has moved to dismiss the information. The Court denies the motion for the reasons set forth herein.

## I. BACKGROUND[1]

Mr. Vega emigrated to the United States without a visa in 1983 and joined his lawfully present family in California. (Decl. ¶¶2-4.) He remained in California for some 28 years, working primarily as a forklift driver. (Decl. ¶¶6, 8.) He has three children, each a U.S. citizen. (Decl. ¶7.) In December 2010, he was convicted of possessing a controlled substance (methamphetamine) for sale in violation of Cal.

---

[1] This description is based on the parties' memoranda (Doc. Nos. 22, 25, & 26) and Mr. Vega's supporting declaration ("Decl.") (Doc. No. 24).

1  Health & Safety Code § 11378 and § 11379(a).[1]  On June 29, 2011, a Notice to
2  Appear was issued alleging his unlawful presence and directing him to appear before
3  an immigration judge ("IJ").  A deportation hearing was held on August 15, 2011.
4  (Opp'n, Ex. 3.)  At that hearing, the government added charges of deportability,
5  alleging the December 7, 2010 conviction to be an aggravated felony under
6  § 101(a)(43)(B) of the INA.  The IJ entered an order of removal to Mexico following
7  the hearing.  (Opp'n, Exs. 5 & 6.)  On August 16, 2011, the defendant was removed
8  to Mexico.  (Opp'n Ex. 7.)

9       During the hearing, Mr. Vega admitted, *inter alia*, to two convictions for
10  violations of the California Health & Safety Code.  The IJ also examined the charging
11  documents concerning those convictions and found that Mr. Vega had been convicted
12  of an aggravated felony.  Mr. Vega was accordingly found subject to removal
13  pursuant to (1) Immigration & Nationality Act ("INA") § 237(a)(2)(B)(i) (8 U.S.C.
14  § 1227(a)(2)(B)(i) for his conviction of a controlled substance offense, and (2) INA
15  § 237(a)(2)(B)(iii); 8 U.S.C. § 1227(a)(2)(A)(iii) because he had been convicted of an
16  aggravated felony.  (Opp'n 3, Ex. 4.)  The IJ informed Mr. Vega that he would not be
17  permitted to return to the United States.  A related consequence was that Mr. Vega
18  was ineligible for "pre-conclusion voluntary departure" under INA § 240B(a).  See 8
19  U.S.C. § 1229c; 8 C.F.R. § 1240.26.
20
21       Some four months after his deportation, Mr. Vega re-entered the United States,
22  and the removal order was reinstated.  (Opp'n, Ex. 7.)  In April 2013, he was arrested
23  a few miles north of the Mexican border, and he admitted to being a Mexican citizen
24  lacking permission to enter the U.S.  He has been charged by information with
25  violating 18 U.S.C. § 1326.  He now collaterally attacks his removal orders and seeks
26  dismissal, arguing that (1) his convictions do not constitute aggravated felonies, (2)
27
28

---

[1] The government's argument is limited to the § 11378 conviction.  The Court therefore focuses on § 11378, though § 11379(a) is similarly framed.

13-cr-1636

1 he was therefore eligible for voluntary departure, and (3) his hearing was

2 constitutionally deficient because he was not so informed.  (Mot. to Dismiss 5-6.)

## II.  LEGAL FRAMEWORK

To sustain a collateral attack under § 1326(d), a defendant must demonstrate that (1) he exhausted all administrative remedies available to him to appeal his removal order; (2) the underlying removal proceedings improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair.  United States v. Ubaldo-Figueroa, 364 F.3d 1047, 1048 (9th Cir. 2004).  An underlying deportation order is "fundamentally unfair" if (1) the defendant's due process rights were violated by defects in his deportation proceeding, and (2) he suffered prejudice as a result.  Id.

An alien cannot collaterally attack an underlying removal order if he validly waived the right to appeal that order.  United States v. Arrieta, 224 F.3d 1076, 1079 (9th Cir. 2000).  However, the exhaustion requirement of 8 U.S.C. § 1326(d) "cannot bar collateral review of a deportation proceeding when the waiver of right to an administrative appeal did not comport with due process."  United States v. Muro-Inclan, 249 F.3d 1180, 1183 (9th Cir. 2001).[4]  If Mr. Vega was eligible for voluntary departure, the exhaustion requirement is excused here because the IJ did not mention voluntary departure at the hearing, as would be required by 8 C.F.R. § 1240.11(a)(2).

## III.  DISCUSSION

### A.  § 11378 Is Not Categorically An Aggravated Felony

The government contends that Mr. Vega was properly deported because an alien "convicted of an aggravated felony at any time after admission is deportable," 8 U.S.C. § 1227(a)(2)(A)(iii), and is ineligible for voluntary departure.  U.S. v. Valdavinos-Torres, 704 F.3d 679 (9th Cir. 2012).  Mr. Vega does not dispute that a felony methamphetamine trafficking violation qualifies as an aggravated felony.

28

---

[4] There was a "general advisal on voluntary departure" at the initial appearance on August 3, 2011.  (Mot. 3.)  However, the government does not claim that was sufficient notice.

13-cr-1636

1   Rather, the parties argue vigorously over whether the Court may look to Mr. Vega's

2   underlying conviction to determine whether it constitutes an aggravated felony under

3   8 U.S.C. § 1101(a)(43)(B), which includes drug trafficking crimes.  See generally

4   Rendon v. Mukasey, 520 F.3d 967, 976 (9th Cir. 2008).  According to Mr. Vega,

5   neither the IJ nor this Court may "look behind the curtain" of the conviction to

6   determine whether the substance was one prohibited under the federal Controlled

7   Substances Act ("CSA"), 21 U.S.C. § 802. This argument is based on the fact that

8   § 11378 does not name methamphetamine or any other substance.  Instead, like the

9   CSA, it references five lists or "Schedules" of substances in other Code sections. For

10   clarity, California Health & Safety Code § 11378 is reproduced here *in extenso*:

> Except as otherwise provided in Article 7 (commencing with Section 4211) of Chapter 9 of Division 2 of the Business and Professions Code, every person who possesses for sale any controlled substance which is (1) classified in Schedule III, IV, or V and which is not a narcotic drug, except subdivision (g) of Section 11056, (2) specified in subdivision (d) of Section 11054, except paragraphs (13), (14), (15), (20), (21), (22), and (23) of subdivision (d), (3) specified in paragraph (11) of subdivision (c) of Section 11056, (4) specified in paragraph (2) or (3) of subdivision (f) of Section 11054, or (5) specified in subdivision (d), (e), or (f), except paragraph (3) of subdivision (e) and subparagraphs (A) and (B) of paragraph (2) of subdivision (f), of Section 11055, shall be punished by imprisonment pursuant to subdivision (h) of Section 1170 of the Penal Code.

19   To determine whether Mr. Vega's conviction under that statute constitutes an

20   aggravated felony, the Court uses the "categorical approach" set forth in Taylor v.

21   United States, 495 U.S. 575, 598 (1990).  Under that approach, the Court looks only

22   to the fact of conviction and the elements of the alleged predicate offense to

23   determine whether it satisfies the definition of the qualifying federal offense (i.e.,

24   whether it is an aggravated felony).  Taylor, 495 U.S. at 602; Moncrieffe v. Holder,

25   133 S.Ct. 1678, 1685 (2013) ("to satisfy the categorical approach, a state drug offense

26   must meet two conditions: It must 'necessarily' proscribe conduct that is an offense

27   under the [CSA], and the [CSA] must 'necessarily' prescribe felony punishment for

28   that conduct.").  Here, it is undisputed that not all convictions under § 11378 qualify

as drug trafficking offenses because it criminalizes a "broader swath" of drugs than

4

1   those proscribed by the CSA.  <u>Cabantac v. Holder</u>, 693 F.3d 825, 825-26 (9th Cir.

2   2012) *amended on denial of reh'g by* ___ F.3d ___, 2013 WL 4046052, *5 (9th Cir.

3   Aug.9, 2013); <u>Mielewczyk v. Holder</u>, 575 F.3d 992, 995 (9th Cir. 2009).  Since it is

4   possible to violate § 11378 without violating the CSA, Mr. Vega's conviction is not

5   categorically an aggravated felony.  <u>Valdavinos-Torres</u>, 704 F.3d at 686-87.

6   Typically, the Court would therefore turn to the "modified categorical approach,"

7   examining certain "approved documents" in the record to identify the substance

8   underlying the conviction and determining whether it was one proscribed by the

9   CSA.[5]  But Mr. Vega argues that approach is impermissible here under the  Supreme

10  Court's recent decision in <u>Descamps v. United States</u>, 570 U.S. ___, 133 S. Ct. 2276

11  (2013).  If he's right, the categorical analysis ends here, short of the proof necessary

12  to establish an aggravated felony conviction.  The Court therefore turns to <u>Descamps</u>

13  to determine whether the modified categorical approach is applicable. <u>Cf.</u> <u>She v.</u>

14  <u>Holder</u>, 629 F.3d 958, 963-4 (9th Cir. 2010).

15      **B.      § 11378 Is Subject to the Modified Categorical Approach**

16      In <u>Descamps</u>, the defendant pled guilty to burglary in violation of a statute that

17  applies whenever someone enters a certain place intending to commit a crime therein.

18  Some thirty years later, he was sentenced in federal court for being a felon in

19  possession of a firearm in violation of 18 U.S.C. § 922(g).  In deciding whether a

20  sentence enhancement applied, the court had to determine whether the burglary

21  conviction constituted a "violent felony" under the federal Armed Career Criminal

22  Act ("ACCA"), 18 U.S.C. § 924(e).  The definition of violent felony includes

23  burglary, but that crime is given a "generic" definition which requires not just

24  entering, but also "breaking" (i.e., unlawful entry), and thus does not encompass, e.g.,

25

26  ───────────────
      [5] "Approved documents" include the charging document, jury instructions, plea
27  colloquy, plea agreement, and judgment. <u>Descamps</u>, 133 S. Ct. at 2285 n.2; <u>Shepard v. United</u>
      <u>States</u>, 544 U.S. 13, 20-21 (2005).  The record here contains the charging document (Opp'n
28  Ex. 9), plea agreement (Opp'n Ex. 10), and minute order entering judgment (Opp'n Ex. 11)
      for the December 2010 drug offense.  While these documents do not say which subsection
      methamphetamine falls under, it appears to be § 11378(5), as the drug is classified as a
      Schedule II stimulant in § 11055(d)(2).  It is undisputed that methamphetamine is on CSA
      Schedule II.  <u>See</u> 21 U.S.C. § 812; 21 C.F.R. § 1308.12(d)(2).

1 shoplifting.  Using the modified categorical approach, the district judge read the plea
2 colloquy, found that the defendant had admitted to breaking and entering a grocery
3 store, and applied the ACCA sentence enhancement.  The Ninth Circuit affirmed.

4     The Supreme Court reversed, holding that the modified categorical approach
5 may be used only when a "divisible" statute "listing potential offense elements in the
6 alternative, renders opaque which element played a part in the defendant's
7 conviction."  133 S.Ct. at 2276.  A statute is divisible if it sets forth "multiple,
8 alternative versions of the crime," thereby "effectively creat[ing] "several different
9 crimes."  Id. at 2284-85 (citation omitted).  A statute is "indivisible" if it does not
10 have alternate elements and criminalizes a "broader swath of conduct" than the
11 relevant federal law does.  Id. at 2282.  The Court explained that "when a defendant
12 pleads guilty, he waives his right to a jury determination only of that offense's
13 elements; whatever he says, or fails to say, about superfluous facts cannot license a
14 later sentencing court to impose extra punishment."  Id. at 2288.  Because unlawful
15 entry was a necessary component of the federal definition of burglary, but not the
16 state statute, the Court held that use of the modified categorical approach was error.

17     The government argues that § 11378 is "divisible" because, like the federal
18 Controlled Substances Act ("CSA") it is written in the "disjunctive," using the word
19 "or" to join subsections referencing other statutes listing different substances.  See
20 generally People v. Patterson, 49 Cal.3d 615, 620 (1989) ("[t]o create statutes
21 separately proscribing the importation, sale, furnishing, administration, etc., of each
22 of these drugs, would require the enactment of hundreds of individual statutes.").
23 Pointing to People v. Gerber, 196 Cal. App. 4th 368 (2011), the government contends
24 that the specific substance is an element, such that § 11378 is divisible as to drugs.
25 Gerber was convicted of violating Cal. Health & Saf. Code § 11353 (proscribing the
26 furnishing of drugs to a minor), which, like § 11378, references five classes of
27 substances.  Methamphetamine was not in any group referenced by § 11353, though
28 cocaine base was.  The jury was nonetheless instructed that § 11353 could be violated
"by providing either cocaine base and/or methamphetamine to a minor." 196 Cal.

6

1   App.4th at 387.  The Court of Appeal reversed, finding "instructional error on the

2   elements" because the jurors could incorrectly conclude that "the controlled substance

3   element . . . had been proven if defendant furnished either cocaine base or

4   methamphetamine."  Id.  Accord  People v. Heglin, No. A131766, 2013 WL 959310

5   (Cal. Ct. App. Mar. 13, 2013) (unpub.) (reversing § 11353 conviction for including

6   unlisted substance as an element in jury instructions).

7       The government also emphasizes that "a prosecutor charging a violation of a

8   divisible statute must generally select the relevant element from its list of

9   alternatives."  Descamps, 133 S.Ct. at 2290 (citation omitted); Witkin & Epstein,

10   CAL. CRIMINAL LAW (4th ed. 2012) ("a specified controlled substance" is an element

11   common to all state drug crimes requiring proof of possession.").  California model

12   jury instructions for drug offenses in general, and those for § 11378 in particular,

13   reflect as much.  See CALCRIM 2302 and CALJIC 12.01 (providing a blank space

14   where the controlled substance is to be identified, and directing that the jury "must"

15   find that fact to convict).  These instructions are accepted by California courts.  See,

16   e.g., People v. Montero, 155 Cal. App.4th 1170, 1175 (2007).

17       The Court agrees that the plain language of the statute suggests a high degree of

18   divisibility.  Indeed, to find such a statute indivisible would be inconsistent with the

19   analysis adopted in Taylor and reaffirmed by Descamps.  Courts interpreting similar

20   statutes have reached the same conclusion.  See, e.g.,  United States v. Flores-

21   Soriano, No. 13-cr-0698, 2013 WL 5217518, *3 (D. Ariz. Sept. 17, 2013) (unpub.)

22   ("Certainly, if a 'ship,' or a 'vehicle' can be an alternate 'element' as understood by

23   the majority in Descamps, then 'heroin' or 'cocaine' can also be elements of

24   11351."); Valdavinos-Torres, 704 F.3d at 686-687 (treating § 11378 as divisble);

25   United States v. Leal–Vega, 680 F.3d 1160 (9th Cir. 2012) (applying modified

26   categorical analysis to discern substance under Cal. H&S § 11352); Ramirez-Macias,

27   No. 13-cr-0059, 2013 WL 4723453 (E.D. Wash. Sept. 3, 2013) (finding Cal. H&S

28   § 11352 divisible); U.S. v. Gonzaelz–Tejeda, 2013 WL 4401381 (S.D.Ca. Aug.15,

1   2013) (rejecting argument that a Washington statute enumerating groups of controlled

2   substances, RCW § 69.50.401A, is indivisible).

3   For his part, the defendant contends that the drugs listed by reference in § 11378

4   are not "elements" because "a jury need not find the specific type of drug involved in

5   a case." (Mot. 7-8.) Under this view, "possession of a controlled substance" is an

6   element and each schedule of drugs merely enumerates different *means* of satisfying

7   that element. The defense reasons that, if a specific drug need not be named in a

8   pleading, plea, or verdict, it is just a fact masquerading as an element, and disjunctive

9   drug statutes like § 11378 are really indivisible. (Reply 4, 7.) The Court disagrees.

10   Several cases cited by the defense are inapposite, as they concerned sufficiency

11   of the pleadings challenges, where the ruling may only be disturbed upon a finding of

12   prejudice "of a substantial right of the defendant upon the merits." See Cal. Penal

13   Code § 960; People v. Gelardi 77 Cal. App.2d 467, 472 (1946) (holding that "in the

14   absence of a special demurrer," an information need not do more than "follow[] the

15   language of the statute"); People v. Orozco No. H024112, 2003 WL 23100024, *4

16   (Cal. Ct. App. Dec. 31, 2003) (unpub.) (the issue was "a variance between pleading

17   and proof"). In People v. Martin, 169 Cal. App. 4th 822, 825 (2008) and People v.

18   Howington, 233 Cal. App. 3d 1052, 1056 (1991), the Court of Appeal found no error

19   in the inconsistent use of the terms "cocaine" and "rock cocaine" (Howington) or

20   "cocaine base" (Martin) because (1) the defense did not object to the specificity of the

21   pleadings, and (2) there was no prejudice to the defendant (e.g., in the form of extra

22   jail time). See, e.g., Martin at 827 ("Assuming . . . the issue is not waived, we further

23   find that the conflicting references to cocaine and cocaine base caused no prejudice

24   . . . as the penalty in [§] 11350(a) is the same, whether the controlled substance is

25   cocaine or cocaine base."). People v. Bryant similarly rests on an interpretation of the

26   scope of the term "cocaine." No. B194468, 2007 WL 2356072 (Cal. Ct. App. Aug.

27   20, 2007) (unpub.) (finding no error in reliance on proof of cocaine base to satisfy

28   cocaine possession charge under statute subjecting possession of either to the same

8

1  penalty).  Finally, <u>People v. Romero</u>, 55 Cal. App. 4th 147, 156 (1997) concerns the

2  *mens rea* for possession, not whether the specific drug is an element.

3       The defense also relies on cases holding that defendants may plead guilty to

4  certain controlled substance offenses without admitting to the specific type of drug

5  involved.  <u>United States v. Thomas</u>, 355 F.3d 1191 (9th Cir. 2004);  <u>United States v.</u>

6  <u>Hunt</u>, 656 F.3d 906, 916 (9th Cir. 2011) ("Even though due process requires that drug

7  type be charged in the indictment and proved beyond a reasonable doubt, a defendant

8  can plead guilty to a possession with intent to distribute offense without admitting the

9  type of drug.");  <u>Ross v. Municipal Court of Los Angeles</u>, 49 Cal. App. 3d 575, 578-

10 79 (1975) (surmising that practice of charging drug crimes without identifying the

11 substance was due to the absence of "a reasonably certain way of knowing [e.g., at the

12 time of arraignment] what that substance was" but noting that the government must

13 promptly respond to a request for discovery as to the underlying substance).  The

14 defendant's reliance on this line of authorities is misplaced.  They present a situation

15 quite distinct from the one in <u>Descamps</u>.  In <u>Descamps,</u> it did not matter how the

16 defendant got into the grocery store—it was a crime regardless.  In a § 841(a)(1)

17 prosecution (e.g., <u>Thomas</u>, <u>Hunt</u>) it matters very much what the defendant

18 possessed—there was no violation if it wasn't an enumerated substance.  So too here.

19 Thus, even assuming drug type need not be specifically charged in a § 11378

20 prosecution, it is consequential if it must be proven beyond a reasonable doubt.

21 Therefore, though it references Schedules that are broader than their federal

22 counterparts, the Court finds that § 11378 is "divisible" and subject to the modified

23 categorical approach.

24       **C.  <u>Acceptable Evidence Established a Methamphetamine Conviction</u>**

25       Since the modified categorical approach may be used, it was appropriate for the

26 IJ to examine the record to determine the precise offense of conviction.  <u>See</u>

27 <u>Descamps</u>, 133 S.Ct. at 2287 (the modified analysis is a tool for implementing the

28 categorical approach by identifying the crime of conviction so the court can compare

13-cr-1636

1  it with the federal statute).  The Court considers only "approved documents," and
2  notes that Mr. Vega has not challenged the sufficiency of the evidence.  See Id. at
3  2285 n.2.  The Court accordingly finds that the criminal complaint, plea agreement,
4  and minute order entering the change of plea are sufficient proof that Mr. Vega pled
5  guilty to felony possession, "for purpose of sale a controlled substance,
6  METHAMPHETAMINE."  (See Opp'n Exs. 9 & 10.)

7  ### D.  Mr. Vega Was Ineligible for Voluntary Departure

8  Possession of methamphetamine for sale in violation of § 11378 is a drug
9  trafficking crime and an aggravated felony for purposes of the INA.  Valdavinos-
10  Torres, 704 F.3d at 686.  Hence, Mr. Vega was ineligible for voluntary departure at
11  the time of his removal proceedings.  8 U.S.C. §§ 1229c, 1254(e); 8 C.F.R. § 1240.26.
12  Naturally, the IJ was not required to mention relief that Mr. Vega had no right to seek.
13  Thus, the Court finds no error and no prejudice.

14  ## IV.  CONCLUSION

15  For the reasons stated, the Court finds that Mr. Vega's 2010 conviction under
16  California Health and Safety Code § 11378 for the unlawful possession of
17  methamphetamine for sale is an aggravated felony.  Mr. Vega was therefore ineligible
18  for voluntary departure at the time of his removal proceedings.  Because he has
19  demonstrated no due process violation (and no prejudice) with respect to his removal,
20  Mr. Vega's collateral attack fails.  Accordingly, the Defendant's Motion to Dismiss
21  the Information is **DENIED**.

22
23  **SO ORDERED.**
24  DATED:  October 28, 2013
25                                          _Barry Ted Moskowitz_
26                                          BARRY TED MOSKOWITZ
                                            Chief United States District Judge
27
28

13-cr-1636